**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MARCUS KING, | ) | |
| | ) | |
| Plaintiff, | ) | No. 22 C 6637 |
| | ) | |
| v. | ) | Judge John J. Tharp, Jr. |
| | ) | |
| THE OFFICE OF THE ILLINOIS | ) | |
| STATE COMPTROLLER, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff Marcus King brings this action against his former employer, the Office of the Illinois State Comptroller, alleging various forms of employment discrimination. For the reasons set forth in the opinion below, the defendant's motion to dismiss [44] is granted in part and denied in part. King is granted leave to amend, consistent with this opinion, by June 10, 2026.

**BACKGROUND**

King started working at the Office of the Illinois State Comptroller ("the Comptroller") on December 18, 2018. His job title was "Senior Advisor for Civic Engagement." He had two primary supervisors: Bona Delano and Louisa Keefe. According to King, Delano and Keefe consistently harassed and discriminated against him because of his race, African American. He specifically alleges that Delano directed racial slurs at him, made racially insensitive comments in his presence, and subjected him to other verbal abuse. King reported some of these comments to Human Resources, to no avail.

In April 2019, King was involved in a car accident and suffered a substantial brain injury. He informed Human Resources of his condition and went on medical leave. That October, while he was still on leave, Keefe and Delano changed his title to "African American Coordinator." In

the new role, King would be responsible for engaging the African American community, rather than the community at large. King learned of the change when he returned to work in June 2020 and interpreted it as a demotion. He asserts that, in addition to demoting him, Keefe and Delano sabotaged his work performance by giving him vague instructions and prohibiting him from attending necessary workshops and trainings.

The alleged harassment continued for several years. In April 2022, King's psychiatrist recommended that he work from home to take care of his mental health. King claims that the Comptroller effectively denied his request to work from home by asking him to fill out extensive paperwork that other employees were not required to submit. King ultimately resigned from his position on August 8, 2022.

## DISCUSSION

King seeks to hold the Comptroller liable for violations of Title VII and the Americans with Disabilities Act (ADA), asserting claims for harassment, discrimination, retaliation, and constructive discharge. He also alleges that the Comptroller violated the Illinois Civil Rights Act (ICRA) by excluding him from workplace programming on the basis of his race. The Comptroller moves to dismiss these claims for failure to exhaust administrative remedies, failure to state a plausible claim for relief, and on preemption grounds.

### I.      Exhaustion of Administrative Remedies

The Court considers the Comptroller's exhaustion arguments first.[1] Failure to exhaust administrative remedies is an affirmative defense and thus generally best suited for resolution on

---

[1] The Comptroller brings some of its exhaustion arguments pursuant to Federal Rule of Civil Procedure 12(b)(6) and others pursuant to Federal Rule of Civil Procedure 12(c). The same standard governs both rules. *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998). But as a technical matter, a party may only move for judgment on the pleadings

a motion for summary judgment. However, the defense may be grounds for dismissal at the pleading stage if "the allegations of the complaint itself set forth everything necessary to satisfy the defense." *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005).

### A. Timeliness

A plaintiff must file a charge with the EEOC within 300 days of discriminatory conduct in order to initiate federal action under Title VII or the ADA on the basis of that conduct. 42 U.S.C. § 200s-5(e); *EEOC v. Harvey L. Walner & Assocs.*, 91 F.3d 963, 970 (7th Cir. 1996); *Stepney v. Naperville Sch. Dist. 203*, 392 F.3d 236, 239 (7th Cir. 2004). The EEOC and the Illinois Department of Human Rights (IDHR) have a workshare agreement wherein a charge filed with the IDHR is considered simultaneously filed with the EEOC.

King filed two charges with the IDHR that bear on the present lawsuit. The first charge (filed May 15, 2021) covers Delano and Keefe's conduct from June 2020 through January 2021 and alleges racial and disability-based harassment and discrimination. It also specifically highlights the October 2019 demotion as an adverse employment action. King's second charge (filed December 7, 2021) details various racially offensive and disparaging comments allegedly made by Delano and Keefe between March 2021 and November 2021. That charge does not reference King's brain injury or allege any kind of disability discrimination.

The Comptroller argues that King missed the 300-day reporting deadline with respect to his Title VII harassment claim because he "did not file his first charge until May 15, 2021, 879 days after he says the racial discrimination and harassment began and more than 560 days after his

---

under Rule 12(c) "after the parties have filed the complaint and answer." *Id.* The Comptroller has not yet filed an answer to King's Fourth Amended Complaint. Accordingly, the Court construes all exhaustion arguments as being brought under Rule 12(b)(6).

3

alleged demotion." Mot. to Dismiss 5, ECF No. 45. That fact, however, does not render the harassment charge untimely. The Supreme Court has explained that the "very nature" of hostile workplace claims "involves repeated conduct [that occurs] over a series of days or perhaps years." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002). As such, "for the charge to be timely, the employee need only file a charge within [] 300 days of *any* act that is part of the hostile work environment." *Id.* at 118 (emphasis added). King's May 15, 2021 charge alleges that general harassing conduct occurred within 300 days of filing. Moreover, King's December 7, 2021 charge lists several instances of harassment within the relevant window, including incidents in March, April, May, and September of that year. Because King timely reported that conduct, his Title VII hostile workplace claim can proceed.

The same is not true, however, for King's racial discrimination claim, which is predicated on his October 2019 demotion. A demotion—like a "termination, failure to promote, denial of transfer, or refusal to hire"—is a "discrete act." *Morgan*, 536 U.S. at 114. And "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." *Id.* at 113. It is undisputed that King was demoted in October 2019, more than 300 days before he filed his first charge. He argues that the 300-day clock did not start running until June 2020, when he returned from medical leave and became aware of the demotion. But even then, the deadline to file the charge was April 26, 2021, at the latest. King did not do so until May 15, 2021.

King emphasizes that he submitted a Complaint Information Sheet (CIS)—or, as he calls it, an "unperfected charge"—with IDHR on December 3, 2020, within the 300-day window. But the Seventh Circuit has explained that "the CIS is just a pre-charge screening form, which does not prompt IDHR to notify the employer, launch an investigation, or sponsor mediation between the parties." *Carlson v. Christian Bros. Servs.*, 840 F.3d 466, 467 (7th Cir. 2016). Thus, it is

4

"merely a prelude to a charge, and not the charge itself." *Id.* at 468. *See also Ballard v. Ameren Ill. Co.*, 173 F.4th 946, 951 (7th Cir. 2026) (affirming *Carlson*). Accordingly, the date on which the CIS was filed does not bear on the timeliness of the formal charge. *See id.* at 950 ("The answer to the question whether an IDHR CIS constitutes a charge that could satisfy the ADA's 300-day requirement is no.") (quotation altered).[2]

Because the charge was not filed within the relevant statutory period, King cannot pursue a claim for Title VII discrimination on the basis of the demotion. Furthermore, although the Comptroller does not raise the issue, the same logic applies King's claims for ADA retaliation and discrimination. Like the racial discrimination claim, these claims are dismissed to the extent that they depend on the demotion as an adverse employment action.[3]

### B. Scope

The Comptroller also urges this Court to dismiss King's constructive discharge claim. King did not resign from his position until August 8, 2022, roughly eight months after he filed his second and final charge. As such, the Comptroller argues that King has necessarily failed to exhaust administrative remedies with respect to that claim. King counters that, though not specifically raised, his constructive discharge claim falls within the scope of his charges because it arises from the harassing and discriminatory facts alleged therein.

---

[2] King cites Illinois case law permitting an untimely IDHR charge to "relate back" to a timely CIS in some circumstances. In *Ballard*, Seventh Circuit acknowledged this aspect of Illinois law, but affirmed *Carlson* nevertheless. *See* 173 F.4th at 951. This Court is bound by that decision.

[3] The Comptroller argues that King did not suffer any adverse employment action because he was not truly "demoted." The Court need not reach the issue because, in any event, King is time-barred from perusing a Title VII or ADA action on the basis of the action. For the same reason, the Court does not reach the Comptroller's argument that King's ADA retaliation claim is outside the scope of his charges.

As a general rule, an administrative charge "need not allege [] each and every fact that combines to form the basis of each claim in [a] complaint." *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). However, there must be "a reasonable relationship between the allegations in the charge and the claims in the complaint" such that "the claim in the complaint can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge." *Id.* Unfortunately for King, the Seventh Circuit has found that administrative charges generally do not encompass adverse employment actions that occur after they are filed. *See Herron v. DaimlerChrysler Corp.*, 388 F.3d 293, 303 n.2 (7th Cir. 2004) ("[T]he four-month delay between his February EEOC complaint and his decision to leave was inconsistent with notice of constructive discharge."); *Conner v. Ill. Dep't of Nat. Res.*, 413 F.3d 675, 680 (7th Cir. 2005) (claim for non-promotion was "necessarily outside the scope" of EEOC charge where the non-promotion occurred a month after the charge was filed). Moreover, various district courts in this circuit have concluded that "it is not reasonable to expect that an investigation into discrimination or harassment will include whether a later-occurring resignation was also discriminatory." *See Shuler v. McCarthy*, No. 19 C 4106SLDJEH, 2019 WL 13171974, at *3-4 (C.D. Ill. Nov. 12, 2019) (collecting cases). The Court sees no reason to depart from this approach and dismisses King's constructive discharge claim accordingly.

## II. Failure to State a Claim

Next, the Comptroller argues that King has failed to state a claim for disability-based harassment under the ADA. At the pleading stage, a complaint need only contain a "short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), as well as "sufficient factual matter" to state a facially plausible basis for relief, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although a court must assume the truth of all well-pled allegations and draw all reasonable inferences in the

plaintiff's favor, it should not accept a complaint's legal or conclusory statements as true. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

To establish a harassment claim supporting a theory of relief under the ADA, a plaintiff must (at minimum) demonstrate a connection between his disability and the harassment. *See Brooks v. Avancez*, 39 F.4th 424, 441 (7th Cir. 2022); *De Lion v. CRRC Sifang Am., Inc.*, No. 22 C 70, 2023 WL 4899814, at *6 (N.D. Ill. Aug. 1, 2023) ("A plaintiff . . . must allege some facts sufficient to show a plausible link between a disability and the workplace hostility alleged."). King has not done so here. He states that Delano "frequently addressed [him] in a disrespectful tone," "spoke to [him] in a derogatory manner," and "verbally abuse[d] [him] by yelling at him." Fourth Amended Complaint (FAC) ¶¶ 92, 94, 96, ECF No. 30. But he provides no facts to suggest a plausible connection between his brain injury and that conduct. He simply asserts that "Delano treated [him] this way because of [his] actual and/or perceived disability." *Id.* at ¶¶ 93, 95, 97. That kind of conclusory statement will not suffice. As such, the claim is dismissed.

## III.    Preemption

In addition to his federal claims, King asserts a state law claim under the ICRA. That statute prohibits any "unit of State, county, or local government" from discriminating against any person based on their race, color, national origin, or gender, or from using "criteria or methods of administration" that have a discriminatory effect. 740 ILCS 23/5(a). It also creates a cause of action for civil claims based on such discrimination. *Id.* 23/5(b). King argues that Delano and Keefe violated the ICRA by excluding him from certain meetings and workshops on the basis of his race. The Comptroller counters that the ICRA does not cover employment discrimination claims like King's, which must instead be brought pursuant to the IHRA (and which are therefore subject to the IHRA exhaustion requirement).

7

It is well established that the ICRA was patterned on Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, which prohibits race and national origin discrimination in federally assisted programs. *See* 93d Ill. Gen. Assemb., H. Deb., April 3, 2003, at 146 (statements of Rep. Fritchey) ("[T]his Bill will create a parallel state remedy to ... the federal cases that were brought under Section 601 of the Civil Rights Act."). However, "[t]here is very little case law specifically considering whether the ICRA encompasses discrimination in the context of government employment, and the little case law existing is wildly inconsistent." *Kainz v. Ill. Dep't of Corr.*, No. 21 C 1250, 2022 WL 22970784, at *6 (C.D. Ill. May 25, 2022) (collecting cases).

Ultimately, this Court does not need to wade into that debate. Assuming, *arguendo*, that the ICRA could be interpreted to encompass King's employment discrimination claim, other principles of statutory interpretation point to the IHRA as the proper avenue for recovery. Illinois courts observe "a fundamental rule of statutory construction that where there exists a general statutory provision and a specific statutory provision . . . both relating to the same subject, the specific provision controls and should be applied." *Knolls Condo. Ass'n v. Harms*, 202 Ill. 2d 450, 459 (2002). Here, the "subject" at issue is individual discrimination in the context of government employment. On that matter, the IHRA is undoubtedly the more specific statute. To start, it requires plaintiffs to exhaust a detailed administrative process before initiating court action. *See generally* 775 ILCS 5/7A-102. The ICRA, by contrast, contains no such requirements, simply providing that "[a]ny party aggrieved . . . may bring a civil lawsuit, in a federal district court or State circuit court, against the offending unit of government." 740 ICLS 23/5(b). Additionally, the IHRA purports a degree of exclusivity. 775 ICLS 5/8-111 ("Except as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act.").

8

This Court is persuaded that "the Illinois General Assembly did not intend to create an end-run around the administrative procedures mandated by the IHRA" in enacting the much broader ICRA. *Kainz*, 2022 WL 22970784, at *9. *See also Fields v. Ill. Dep't of Corr.*, No. 03 C 4222JPG, 2005 WL 8173889, at *2 (S.D. Ill. Dec. 2, 2005) (concluding that "the IHRA, not the ICRA, governs employment discrimination cases" because allowing the plaintiff to proceed under the latter would "negate[] the comprehensive procedures that IHRA requires before an employment discrimination case can be heard in court"). King's ICRA claim is therefore dismissed.[4]

*    *    *

In sum, the Comptroller's motion to dismiss is granted in part and denied in part. King's Title VII harassment claim (Count I) may proceed. However, King's claims for Title VII discrimination (Count II) and ADA discrimination and retaliation (Count III) are dismissed insofar as the claims are predicated on the October 2019 demotion. The Court also dismisses King's ADA harassment claim (Count III) for failure to state a plausible basis for relief and his constructive discharge claim (Count IV) for failure to exhaust administrative remedies. Finally, it dismisses his ICRA claim (Count V) as preempted by the IHRA.

Plaintiffs are ordinarily entitled to at least one chance to amend their complaints after a dismissal, unless amendment would be futile. *Zimmerman v. Bornick*, 25 F.4th 491, 493-94 (7th Cir. 2022). Because King did not timely report his October 2019 demotion, and because no amendment could cure that deficiency, the claims predicated on the demotion are dismissed with prejudice. King's ICRA claim is also dismissed with prejudice since its flaw cannot be remedied

---

[4] King avers that his ICRA claim is not the kind of garden variety employment discrimination claim that falls within the scope of Title VII or the IHRA. That argument lacks any substance: his ICRA claim depends on same the facts of individual employment discrimination alleged elsewhere in the complaint.

9

by additional fact allegations. King's constructive discharge and ADA harassment claims are dismissed without prejudice. King is granted leave to amend consistent with this opinion by June 10, 2026.

Date: May 20, 2026

John J. Tharp, Jr.
United States District Judge